**BURLINGTON NORTHERN RAILROAD COMPANY, Duluth, Missabe & Iron Range Railway Company, et al., Plaintiffs–Appellants,**

v.

**WISCONSIN DEPARTMENT OF REVENUE, Defendant–Appellee.**

No. 94–3738.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1995.

Decided June 29, 1995.

Ann Ustad Smith, Michael, Best & Friedrich, Madison, WI, James W. McBride (argued), Anne M. Stolee, Baker, Donelson, Bearman & Caldwell, Washington, DC, for plaintiffs-appellants Burlington Northern Railroad Co., Chicago & North Western Railway Co., Duluth, Missabe & Iron Range Railway Co., Duluth, Winnipeg & Pacific Railway Co., Escanaba & Lake Superior Railroad Co., Fox River Valley Railroad Corp., Fox Valley & Western Railroad Co., Green Bay & Western Railroad Co., Nicolet Badger Northern Railroad Co., Soo Line Railroad Co., Tomahawk Railway, Wisconsin Central, Ltd., Wisconsin & Calumet Railroad Co., Wisconsin & Southern Railroad Co., Marinette, Tomahawk & Western Railroad Co.

Peter C. Anderson, Asst. Atty. Gen. (argued), Office of Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for defendant-appellee Wisconsin Dept. of Revenue.

Before CUMMINGS and RIPPLE, Circuit Judges, and WILL, District Judge.*

CUMMINGS, Circuit Judge.

In *Oregon Dept. of Revenue v. ACF Industries,* —— U.S. ——, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994), the Supreme Court held that a state's exemptions of various classes of

---

* The Honorable Hubert L. Will of the Northern   District of Illinois is sitting by designation.

non-railroad property from a generally applicable *ad valorem* property tax are not cognizable under the Railroad Revitalization and Regulatory Reform Act (the "Act"), 49 U.S.C. § 11503(b)(4). Plaintiffs—all railroads operating and taxed in the state of Wisconsin—nonetheless appeal the district court's grant of summary judgment against them, arguing that because Wisconsin's property tax exempts 80% of non-railroad commercial and industrial property, it is not a tax of general application.

## I

Railroads "'are easy prey for State and local tax assessors' in that they are 'nonvoting, often nonresident, targets for local taxation,' who cannot easily remove themselves from the locality." *Western Air Lines, Inc. v. Board of Equalization,* 480 U.S. 123, 131, 107 S.Ct. 1038, 1043, 94 L.Ed.2d 112 (quoting S.Rep. No. 91–630, p. 3 (1969)). Congress provided statutory protection from discriminatory taxation in the Act. Section 11503(b), at issue in the present case, provides:

The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

(2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.

(3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(4) impose another tax that discriminates against a rail carrier providing transportation. . . .

In the present appeal, the railroads do not allege a discriminatory assessment or rate as proscribed by subsections (b)(1)–(3). They argue instead that because Wisconsin exempts so much (the parties stipulated to a figure of 80% in prior litigation) of the taxable commercial and industrial personal property in the state, that Wisconsin's *ad valorem* property tax—though nominally one of general application—is in fact "another tax that discriminates against a rail carrier" violative of subsection (b)(4).

In *ACF Industries,* a suit challenging Oregon's *ad valorem* property tax by eight lessors of railroad cars, the Supreme Court rejected this same argument made by these same lawyers. The Court did not reach the validity of Oregon's tax because it found as a preliminary matter that a tax on railroad property is not subject to challenge under subsection (b)(4) based on the state's exemption of other classes of commercial and industrial property.

The Court reached its conclusion from a reading of the statute as a whole. Subsections (b)(1)–(3) prohibit discrimination between railroad and other "commercial and industrial property." This comparison class of "commercial and industrial property" is defined earlier in the statute as "property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy." § 11503(a)(4). The Court then determined that "subject to a property tax levy" means "taxed" rather than "within the state's jurisdiction and power to tax." Therefore subsections (b)(1)–(3) only prohibit discrimination between railroad property and other forms of commercial and industrial property which are also taxed. These subsections do not impinge on a state's ability to exempt from taxation other classes of commercial and industrial property. Finally, the Court determined that it would be "illogical" to read subsection (b)(4) to trump the states' power to grant exemptions which Congress preserved in subsections (b)(1)–(3).

The Court buttressed its reading of the statute by noting that exemptions from state *ad valorem* property taxes were common and an "important aspect of state and local tax policy" and that "[h]ad Congress, as a condi-

tion of permitting the taxation of railroad property, intended to restrict state power to exempt non-railroad property, we are confident that it would have spoken with clarity and precision." *ACF Industries,* — U.S. at ——, 114 S.Ct. at 850.

Petitioner argued that the Court's interpretation would lead to the anomalous result that a state could avoid the tax rate and assessment prohibitions of subsections (b)(1)–(3) by exempting all non-railroad property. In response, the Court noted that because Oregon's system was not one in which "railroads—either alone or as part of some isolated and targeted group—are the only commercial entities subject to an ad valorem property tax," it did not have to decide whether subsection (b)(4) would prohibit a tax that effectively singled out railroad property. *Id.* at —— – ——, 114 S.Ct. at 851–52.

## II

■ Despite plaintiffs' arguments to the contrary, the Supreme Court in *ACF Industries* did not merely determine that Oregon's level of exemptions passed muster under the statute. Rather, the Court held that claims based on exemptions do not fall under the statute. The Court left open only the singular case of a nominally general tax which is in fact a tax only on railroads. Wisconsin's tax is not.[1]

Wisconsin Statute § 70.01 imposes a property tax "upon all general property in this state except property that is exempt from taxation." Sections 70.11 and 70.111 enumerate specific exemptions. As alleged by the railroads, these include:

> manufacturing machinery and processing equipment; merchants' stock-in-trade, manufacturers' materials and finished

products, and livestock; animals including farm poultry, farm animals, bees and bee equipment, fur-bearing animals under four months of age and hides and pelts of farm and fur-bearing animals in the hands of growers; natural cheese while in storage; growing and harvested crops and the seed, fertilizer, and supplies used in their production in the hands of the grower including nursery stock and Christmas trees; mechanics' tools, farm and garden equipment; feed and feed supplements used on a farm; watercraft used in interstate traffic; and logging equipment (R. 10: par. 15).

This list is not short, but neither is it exhaustive of all non-railroad property. Wisconsin's exemptions are in fact quite similar to Oregon's. The railroads contend, however, that Wisconsin's exemption for manufacturing machinery and equipment used directly in the manufacturing process, an exemption not found in the Oregon system, makes all the difference. That exemption, they claim, excludes the most comparable non-railroad property and increases the percentage of exempt property well beyond that in Oregon, thereby pushing the Wisconsin tax beyond the holding of *ACF Industries.*

The exemption for manufacturing machinery is, however, among the list of common exemptions noted by the Court in *ACF Industries.* — U.S. at ——, 114 S.Ct. at 850. Moreover, the percentages of exempt property in Oregon and Wisconsin are not so different. The same lawyers who now argue that Wisconsin's alleged exemption of 80–85% far surpassed Oregon's, argued to the Supreme Court, based on the same methods of calculation, that Oregon in fact exempted 67–75% of non-railroad commercial and industrial property (Def.Supp.App. 145).

---

1. The railroads call our attention to a recent decision of a federal district court in North Dakota, *Ogilvie v. State Board of Equalization of the State of North Dakota,* Case No. A3–80–134, 1995 WL 500472 (D.N.D., June 9, 1995), which held that *ACF Industries* did not overrule the district court's earlier decision enjoining the state from taxing the personal property of railroads. The court determined that because North Dakota only taxes the personal property of "centrally assessed" industries, *i.e.,* railroads, airlines, tele-

communication, electric, gas, and pipeline companies, it was not a general tax like Oregon's but was a tax aimed at a targeted group of industries. Without our expressing an opinion on the correctness of that decision, it is clearly distinguishable from the present case. Wisconsin's tax, like Oregon's and unlike North Dakota's, is a universal tax which exempts certain classes of property. The exemptions do not depend on whether the business which owns the property is locally or centrally assessed.

All these calculations of percentages of exempted property are, however, beside the point. After *ACF Industries,* exempt property is not part of the comparison class, so that arguing about levels of exemption gets one nowhere. The railroads can only succeed by showing that the actual tax levied is a general tax in name only and is in fact a tax on railroads. The only number relevant to that inquiry is the percentage of the total tax levy that falls on railroads.[2] No matter how one defines the "total tax," and the parties dispute whether it should include both real and personal or just personal property,[3] the numbers themselves are uncontested and fatal to the railroads' claim. During the relevant years, 1988–1992, the tax levy on railroad property was less than .3% of the total property tax levy; less than 1% of the property tax levy on other commercial and industrial property; and less than 5% of the levy on other commercial and industrial personal property.[4] (R. 16 and 17).

Whichever number one chooses, it is a stake in the heart of the railroad's claim that Wisconsin's property tax singles out railroads and is not a tax of general applicability. *ACF Industries,* therefore, forecloses the railroads' claim. The summary judgment is affirmed.

2. The railroads do not claim that they are singled out as part of a larger targeted group of industries. If that were the case, these numbers would not necessarily be dispositive and one would presumably have to look at the percentage of the total tax levy falling on the targeted group in determining whether the tax was one of general application.

3. Under Wisconsin law railroad property, both real and personal, is valued and assessed as a unit. Wis.Stat. § 76.02.

4. The following tax levies (in billions) from 1992 are typical (R. 17):

all property: $4.9
commercial and industrial real and personal property: $1.4
commercial and industrial personal property: $.26
railroad property: $.011.