PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 8/26/96**

TENTH CIRCUIT

| | |
|---|---|
| BURLINGTON NORTHERN RAILROAD COMPANY, | ) |
| | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| vs. | )    95-1316 |
| | ) |
| MARY HUDDLESTON, in her capacity as Property Tax Administrator of the State of Colorado, and DIVISION OF PROPERTY TAXATION OF THE DEPARTMENT OF LOCAL AFFAIRS OF THE STATE OF COLORADO, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants-Appellants. | ) |

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. C. No. 95-S-472)

Richard A. Malm of Dickinson, Mackaman, Tyler & Hagan, P.C., Des Moines, Iowa, (Walter J. Downing of Knudsen, Berkheimer, Richardson & Endacott, Denver, Colorado, and Stephen D. Goodwin of Baker, Donelson, Bearman & Caldwell, Memphis, Tennessee, with him on the brief), for Plaintiff-Appellee.

Larry A. Williams, First Assistant Attorney General, State Services Section, (Gale A Norton, Attorney General, with him on the brief), Denver, Colorado, for Defendants-Appellants.

Before BALDOCK, LOGAN, and BRISCOE, Circuit Judges.

BALDOCK, Circuit Judge.

Pursuant to its taxing power under Colo. Const. art. X, the Colorado legislature has enacted procedures for the taxation of personal property within the State. Colo. Rev. Stat. §§ 39-1-101 to 39-2-131 (1994). Colorado law generally exempts from taxation the value of intangible personal property including computer software. Id. § 39-3-118. Colorado law, however, does not exempt from taxation the value of intangible personal property owned by public utilities. Id. § 39-22-611. For property tax purposes, Colorado law defines a public utility as any "railroad company, airline company, electric company, rural electric company, telephone company, telegraph company, gas company, gas pipeline carrier company, domestic water company . . . , pipeline company, coal slurry pipeline, or private car line company." Id. § 39-4-101(3). Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (4-R Act) proscribes certain forms of state taxation deemed to unreasonably burden rail carriers engaged in interstate commerce. The issue presented is whether the Defendant Colorado Property Tax Administrator's refusal to exempt the value of the Plaintiff Burlington Northern Railroad's computer software from taxation constitutes tax discrimination under § 306 of the 4-R Act. Under the unique procedural posture of this case, we hold that it does. We therefore uphold the district court's judgment permanently enjoining Defendant from assessing an ad valorem tax against the value of Plaintiff's computer software.

2

I.

Under Colo. Rev. Stat. §§ 39-4-101 & 106 (1994), Defendant annually assesses Plaintiff's rail transportation property for ad valorem tax purposes. Defendant bases the assessment on the value of Plaintiff's rail transportation property located within the State of Colorado. Defendant apportions the assessed value of the property among the State's various counties. The counties thereafter apply a tax levy and collect taxes from Plaintiff.

In 1994, Plaintiff requested a tax exemption based upon the value of its computer software. Defendant denied Plaintiff's request. Plaintiff then instituted this action in the district court seeking declaratory and injunctive relief under § 306(1)(d) of the 4-R Act.[1]

---

[1] Section 306(1), codified at 49 U.S.C. § 11503(b), states:

(1) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
    (a) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.
    (b) levy or collect a tax on an assessment that may not be made under clause (a) of this subsection.
    (c) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.
    (d) impose another tax that discriminates against a rail carrier . . . [engaged in interstate commerce].

3

Section 306(d)(1) prohibits a state from levying "another tax that discriminates against a rail carrier" engaged in interstate commerce. According to the complaint, the "imposition of a property tax on the value of [Plaintiff's] intangible computer software, where the computer software of other commercial and industrial taxpayers in Colorado is not taxed, results in discriminatory treatment of a common carrier by rail in violation of Section 306(1)(d)." Plaintiff alleged the value of its computer software located in the State of Colorado was at least $8,000,000, which entitled Plaintiff to a property tax deduction of at least $2,250,000. Defendant did not dispute Plaintiff's factual allegations, and never submitted an answer to the complaint. Rather, Defendant filed a motion to dismiss which disputed only as a matter of law Plaintiff's conclusion that the failure to exempt the value of Plaintiff's computer software from the property tax assessment constituted tax discrimination in violation of the 4-R Act. According to the Defendant, § 306 would not afford Plaintiff relief under any set of facts because in Department of Revenue of Oregon v. ACF Industries, Inc., 510 U.S. 332 (1994), the Supreme Court held that the 4-R Act did not apply to tax exemptions. Thereafter, Plaintiff filed a motion for a preliminary injunction seeking to enjoin Defendant from collecting the disputed tax. The parties agreed that the amount of disputed tax totaled $184,767.89. Plaintiff deposited that amount in the district court's registry pending resolution of the case.

Aside from the allegations of the complaint, at no time did either party seek to introduce any factual evidence tending to establish or negate the alleged discriminatory

4

effect of the State of Colorado's intangible property tax exemption. By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually. Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading."). Defendant certainly would have been entitled to file an answer upon the district court's denial of the motion to dismiss, Fed. R. Civ. P. 12(a)(4)(A), but chose not to. Instead, the parties' requested the court to decide the case as a matter of law on the record they presented. The court entered an order "permanently" enjoining Defendant from assessing a tax based on the value of Plaintiff's computer software.[2] The court reasoned that because Defendant excluded only public utilities as an "isolated and targeted group" from the State's general exemption on intangible property, the tax Defendant imposed upon the value of Plaintiff's computer software was discriminatory in

---

[2] The dissent argues that Plaintiff failed to prove its case. Of course, if Defendant had denied the factual allegations of the complaint and required Plaintiff to prove that the failure to grant Plaintiff the property tax exemption had a discriminatory effect in violation of § 306(1)(d), then we might have a different situation. But the Defendant "put all its eggs in one basket," arguing only that under ACF, 510 U.S. at 366, property tax exemptions were not subject to challenge under § 306(1)(d). Thus, "what sort of proof the railroad must present and what rebuttals or defenses are available to the taxing authority are questions for another day." Burlington Northern Railroad Co. v. City of Superior, 932 F.2d 1185, 1188 (7th Cir. 1991). In any event, even if Defendant had required Plaintiff to meet its burden of proof, the most that can be said is Plaintiff has not proven its case as a matter of law. Plaintiff presumably would still be permitted to engage in discovery, and, if a genuine dispute of material fact existed, proceed to trial, and given the opportunity to prove its case as a matter of fact.

violation of § 306(d)(1). Defendant appealed. Our jurisdiction arises under 28 U.S.C.

§ 1291. We review questions of law turning on the interpretation and application of a

federal statute de novo. Dikeman v. National Educators, Inc., 81 F.3d 949, 951 (10th Cir.

1996). We affirm.[3]

## II.

Prior to 1994, Defendant exempted the value of Plaintiff's computer software from

Plaintiff's property tax assessment because Defendant believed § 306(1)(d) of the 4-R Act

mandated the exemption. In January 1994, however, the Supreme Court decided

Department of Revenue of Oregon v. ACF Industries, Inc., 510 U.S. 332 (1994). Since

ACF, Defendant has asserted that the State of Colorado lawfully may deny public

utilities, including Plaintiff, the general exemption for intangible property.

In ACF, the Supreme Court addressed the issue of whether the State of Oregon

violated § 306(1)(d) of the 4-R Act "by imposing an ad valorem tax upon railroad

---

[3] As a jurisdictional matter, we note that the district court in this case failed to enter a "final judgment" on a separate document as required by Fed. R. Civ. P. 58. To eliminate uncertainty as to the finality of district court decisions and ease appellate jurisdictional review, we encourage all district courts to comply with Rule 58's separate document requirement in every proper instance. Nevertheless, the circuit court has jurisdiction of "final decisions" of the district court under 28 U.S.C. § 1291. If no question exists as to the finality of the district court's decision, the absence of a Rule 58 judgment will not prohibit appellate review. Bankers Trust Co. v. Mallis, 435 U.S. 381, 382-88 (1978); Kunkel v. Continental Casualty Co., 866 F.2d 1269, 1272 n.3 (10th Cir. 1988). In this case, the district court permanently enjoined Defendant from taxing the value of Plaintiff's computer software. Because the district court's order granted Plaintiff its requested relief and effectively terminated the action, we may properly exercise appellate jurisdiction over this appeal under § 1291.

6

property while exempting various other, <u>but not all</u>, classes of commercial and industrial property." <u>Id.</u> at __ (emphasis added). In that case, Oregon imposed an ad valorem tax upon all real and personal property within its jurisdiction, except property granted an express exemption. Various classes of business personal property were exempt, including agricultural machinery and equipment; nonfarm business inventories; livestock; poultry; bees; fur-bearing animals; and agricultural products in the possession of farmers. <u>ACF</u>, 510 U.S. at __. Companies which leased railroad cars to railroads and shippers claimed that the tax constituted "another tax that discriminates against a rail carrier," in violation of § 306(1)(d), because the state exempted certain classes of commercial and industrial property, but taxed railroad cars in full. <u>Id.</u> at __.

The Court held that "a State may grant exemptions from a generally applicable ad valorem property tax without subjecting the taxation of railroad property to challenge under the relevant provision of the 4-R Act, § 306(1)(d) . . . ." <u>Id.</u> at __. Interpreting the 4-R Act as a whole, the Court concluded that railroads may not challenge property tax exemptions to a generally applicable ad valorem property tax under § 306. <u>Id.</u> at __-__. That, Defendant claims, should be the end of our inquiry, and necessarily, Plaintiff's challenge to the State of Colorado's intangible property tax exemption for all commercial and industrial taxpayers other than public utilities must fail.

The Court recognized, however, that <u>ACF</u> was "not a case in which the railroads-- either alone or as part of some isolated and targeted group--are the only commercial

entities subject to an ad valorem tax." Id. at __. The Court explained that "[i]f such a case were to arise, it might be incorrect to say that the State 'exempted' the nontaxed property. Rather, one could say that the State had singled out railroad property for discriminatory treatment." Id. at __. Relying on this language, Plaintiff claims that the State of Colorado has unlawfully "isolated and targeted" railroads and other public utilities as a group, and subjected them to an intangible personal property tax, from which all other commercial and industrial taxpayers within the State are "exempt."

III.

Given the Supreme Court's qualifying language in ACF that state tax "exemptions" denied to an "isolated and targeted group," might violate § 306(1)(d), we reject Defendant's assertion that no "property tax exemption," regardless of its nature or effect, is subject to challenge under § 306. Otherwise, states could circumvent § 306 simply by enacting a tax of "general application," and then "exempting" from the tax all but a certain class of taxpayers, which, as the Court noted in ACF, is really not an "exemption" at all, but a singling out of certain taxpayers for discriminatory treatment. ACF, 510 U.S. at __ ("'term "exemption" does not mean every exclusion from the reach of a levy'") (quoting J. Hellerstein & W. Hellerstein, State and Local Taxation 973 (5th ed. 1988)). We therefore apply ACF and construe the validity of Colorado's intangible property tax exemption.

Construing § 306 in its entirety, the Court in ACF inferred that the proper

8

comparison class in analyzing whether a tax discriminates against a railroad in violation of § 306(1)(d), is "other commercial and industrial taxpayers". <u>ACF</u>, 510 U.S. at __-__; <u>see</u> <u>also</u> <u>Atchison, Topeka and Santa Fe Railway Co. v. State of Arizona</u>, 78 F.3d 438, 441-42 (9th Cir. 1996) (holding that proper comparison class under § 306(1)(d) is "other commercial and industrial taxpayers."); <u>Kansas City Southern Railway Co. v. McNamara</u>, 817 F.2d 368, 375 (5th Cir. 1987) (same). The 4-R Act defines "commercial and industrial property" as "property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use . . . ." 49 U.S.C. § 11503(a)(4). Both subsections (1)(a) and (1)(c) of § 306 establish a comparison class of "commercial and industrial property," and we can think of no sound reason why Congress did not intend the same class to be used in analyzing discrimination claims under subsection (1)(d). <u>See</u> <u>ACF</u>, 510 U.S. at __ (interplay between subsections (1)(a) and (1)(c), and the 4-R Act's definition of "commercial and industrial property" "central" to the construction of subsection (1)(d)).

Unlike the tax exemption at issue in <u>ACF</u>, Colorado's intangible property tax exemption applies to <u>all</u> commercial and industrial taxpayers other than "public utilities." In <u>ACF</u>, most taxpayers in the comparison class were subject to the disputed tax. A large portion of the property exempted was agricultural, which does not fall within the 4-R Act's definition of commercial and industrial property. But in this case, Colorado imposes an intangible property tax only upon a narrow group of taxpayers, consisting of

9

interstate interests. Such interests, Congress and the Court have noted, are "'easy prey for State and local tax assessors' in that they are 'nonvoting, often nonresident, targets for local taxation,' who cannot easily remove themselves from the locality." Western Air Lines, Inc. v. Board of Equalization, 480 U.S. 123, 131 (1987) (quoting S. Rep. No. 91-630, p.3 (1969)). Accordingly we hold that Colorado's intangible property tax exemption singles out Plaintiff as part of an "isolated and targeted group" for discriminatory tax treatment in violation of § 306(1)(d) of the 4-R Act, as interpreted by the Supreme Court in ACF. Defendant is permanently enjoined from assessing an ad valorem tax against the value of Plaintiff's computer software.

AFFIRMED.

95-1316, Burlington Northern Railroad Co. v. Huddleston

BRISCOE, Circuit Judge, dissenting:

I respectfully dissent. In Department of Revenue of Oregon v. ACF Industries, 114 S. Ct. 843 (1994), the Supreme Court described a narrow set of facts under which railroads might successfully challenge state tax exemptions pursuant to § 306(1)(d) of the 4-R Act (codified at 49 U.S.C. § 11503(b)(4)). Specifically, the Court noted that if a case were to arise "in which the railroads--either alone or as part of some isolated and targeted group--are the only commercial entities subject to an ad valorem property tax[,] . . . one could say that the State had singled out railroad property for discriminatory treatment." Id. at 851.

In challenging the State of Colorado's assessment of property taxes on its computer software, plaintiff claims the facts of this case are precisely those described in ACF. Although the majority agrees with plaintiff, I conclude plaintiff has failed to satisfy its burden of proof under the 4-R Act.

In tax discrimination suits filed under the 4-R Act, "[t]he burden of proof . . . is governed by State law." 49 U.S.C. § 11501(c). In this case, Colorado law provides that "the burden of proof in any civil action shall be by preponderance of the evidence." Colo. Rev. Stat. § 13-25-127(1) (1995); see generally Gerner v. Sullivan, 768 P.2d 701, 703-04 (Colo. 1989) (en banc) (discussing the burden of proof requirements of § 13-25-127(1)). Thus, plaintiff has the burden of proving, by a preponderance of the evidence, that the tax scheme at issue violated § 306(1)(d) of the 4-R Act. More specifically, plaintiff must demonstrate, by a preponderance of the evidence, that the challenged tax scheme "single[s] out" railroads, "either alone or as part of some isolated and targeted group." ACF, 114 S. Ct. at 851.

Under the challenged tax scheme, the exemption for intangible personal property generally afforded to Colorado taxpayers does not apply to public utilities, see Colo. Rev. Stat. § 39-22-611 (1995), which are defined under Colorado law to include any entity doing business "as a railroad company, airline company, electric company, rural electric company, telephone company, telegraph company, gas company, gas pipeline carrier company, domestic water company selling at retail except nonprofit domestic water companies, pipeline company, coal slurry pipeline, or private car line company." Colo. Rev. Stat. § 39-4-101(3) (1995). Since railroads are not singled out alone by the tax scheme but are included in the group defined as "public utilities," plaintiff must demonstrate this group of entities is "isolated and targeted" as described by the Supreme Court in ACF.

Although ACF does not specifically indicate what type of proof plaintiff must present to make this showing, other circuits have developed helpful guideposts. In referring to an "isolated and targeted group," ACF cites the Seventh Circuit opinion in Burlington Northern R. Co. v. City of Superior, 932 F.2d 1185 (7th Cir. 1991) (Superior). In Superior, the State of Wisconsin enacted a statute empowering municipalities to levy an occupational tax on the owners and operators of "iron ore concentrates docks." 932 F.2d at 1186. Notably, there were only three such docks in the state, all in the city of Superior, and all operated by Burlington Northern. In a challenge brought under the 4-R Act, the Seventh Circuit concluded that, in light of § 306(1)(d), the states are "confined to taxing railroads as members of larger taxpayer groups--owners of commercial or industrial property, recipients of gross income, recipients of net income, whatever." Id. at 1188. Because the challenged tax affected only railroads, the Seventh Circuit concluded

2

it was in violation of subsection (1)(d).  In dicta, the court also briefly discussed the implications of a tax levied upon railroads as part of a larger group:

> Another difficult question that we need not decide today is how the judicial inquiry should be structured if the tax is imposed on an activity in which railroads are not the sole, but are the principal, actors.  Suppose a tax of 5 cents per ton handled by all docks in the State of Wisconsin is levied, and railroads handle 85 percent of all the cargo handled by docks in Wisconsin.  Trailer Train Co. v. Leuenberger, supra, 885 F.2d at 418, holds, sensibly in our view, that the *inclusion of some nonrail activities in a class of activities dominated by railroads does not immunize a tax from challenge under section 306.*  But what sort of proof the railroad must present and what rebuttals or defenses are available to the taxing authority are questions for another day.

Id. at 1188.  (Emphasis added.)

In a more recent post-ACF challenge brought by a group of railroads (including plaintiff) against another Wisconsin tax scheme, the Seventh Circuit again touched upon the type of proof that might be necessary to demonstrate discrimination under § 306(1)(d).  Burlington Northern R. Co. v. Wisconsin Dept. of Revenue, 59 F.3d 55 (7th Cir. 1995) (Wisconsin).  The Wisconsin court noted that, if a railroad claims it is singled out as part of a larger targeted group of industries, "one would presumably have to look at the percentage of the total tax levy falling on the targeted group in determining whether the tax was one of general application."  Id. at 58 n.2.

Here, plaintiff presented one type of evidence to the district court in support of its claim of discrimination--affidavits concerning the amount of plaintiff's alleged tax savings if its computer software was not subject to property tax assessment.  In my opinion, this evidence is wholly insufficient to satisfy plaintiff's burden of proof.  Specifically, this evidence does not allow us to determine whether railroads "dominate" the class of entities deemed "public utilities" under the challenged tax scheme, or whether they are a small part of that class.  Nor does it indicate whether the railroads' share of the

3

total tax on personal intangible property is dominant, or whether they pay a small percentage of the tax. Further, it does not indicate whether the class of "public utilities" under the scheme could be considered an "isolated" group when compared to the general class of commercial and industrial taxpayers in Colorado. Finally, it does not indicate whether the class of "public utilities" is made up of primarily "local" taxpayers, or whether the group contains primarily "foreign" taxpayers (such as the railroads). See Kansas City Southern Ry. Co. v. McNamara, 817 F.2d 368, 375 (5th Cir. 1987) ("The only simple way to prevent tax discrimination against the railroads is to tie their tax fate to the fate of a large and local group of taxpayers" who "will have the political and economic power to protect itself against an unfair distribution of the tax burden.").

The majority would relieve plaintiff of its burden of proof in this case because defendant argued it should prevail as a matter of law under ACF. The basis for this conclusion arises from the faulty premise that defendant had somehow conceded that defendant's failure to grant plaintiff the property tax exemption was discriminatory, in violation of § 306(1)(d).

In holding that the challenged tax scheme violates the 4-R Act, the majority sidesteps the burden of proof problem based upon what it characterizes as "the unique procedural posture of this case." Majority opinion at 2. Specifically, the majority notes defendant filed a motion to dismiss the complaint but never filed an answer specifically denying the factual allegations in the complaint. According to the majority, "[b]y failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually." Id. at 5. This conclusion is untenable. Under Fed.

4

R. Civ. P. 12(a)(4), the filing of a motion to dismiss alters the time period for filing an answer to the complaint. In particular, an answer need not be filed until ten days after the district court "denies the motion [to dismiss] or postpones its disposition until the trial on the merits." Fed. R. Civ. P. 12(a)(4)(A). Here, the district court denied defendant's motion to dismiss at the same time it granted plaintiff's motion for preliminary injunction. Thus, the case was completely resolved before the ten-day time period under 12(a)(4)(A) was triggered and defendant was under no obligation to file an answer to plaintiff's complaint.

Further, it is apparent from reviewing the pleadings in this case, as well as the district court's final order, that defendant denied the challenged tax scheme was discriminatory. For example, in its motion to dismiss, defendant specifically asserted that plaintiff's "complaint fail[ed] to state a claim pursuant to 49 U.S.C. § 11503(b)(4) upon which relief can be granted." R. at 20. In ruling on defendant's motion to dismiss, the district court acknowledged defendant's "failure to state a claim" argument and concluded it went "to the merits of the case." Id. at 199. At no time did plaintiff assert, nor did the district court conclude, that defendant admitted the tax scheme was discriminatory.

Setting aside the erroneous conclusion that defendant admitted the allegations of plaintiff's complaint, it is apparent that the majority's ultimate conclusion in this case is unsupported by the record. The majority's conclusion that the group of "public entities" is an "isolated and targeted group" is at best an assumption. Not only does this assumption provide a windfall to plaintiff, it effectively, in my opinion, broadens the narrow exception left open by the Supreme Court in ACF. Under the majority opinion, a railroad can now arguably prevail under § 306(1)(d) by demonstrating simply that a challenged tax

5

scheme affects a group of public entities, of which railroads are a part.

For these reasons, I would reverse the decision of the district court and remand for entry of judgment in favor of defendant.[4]

---

[4] In footnote 2 of the majority opinion, it is suggested that "even if Defendant had required Plaintiff to meet its burden of proof, the most that can be said is Plaintiff has not proven its case as a matter of law," and should therefore be allowed to engage in discovery and prove its case as a matter of fact. I wholly disagree. Plaintiff willingly chose to forego discovery in this case and instead requested the district court to rule on its complaint as a matter of law. Because the facts provided by plaintiff were insufficient to satisfy plaintiff's burden of proof, the matter must be resolved in favor of defendant, and plaintiff should not be allowed a "second bite at the apple."