**BURLINGTON NORTHERN RAILROAD COMPANY, INC., Appellee,**

v.

**Gerald D. BAIR, Director of Iowa Department of Revenue, Appellant.**

No. 93–4029.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1994.

Decided July 6, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 31, 1995.*

* Magill, Circuit Judge, took no part in the consideration or decision of this case.

C.A. Daw, Boise, ID, argued, for appellant.

James W. McBride, Washington, DC, argued (Richard A. Malm, Des Moines, IA, Stephen D. Goodwin, Memphis, TN, and Thomas H. Catalano, Ft. Worth, TX, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, McKAY,[*] Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Burlington Northern Railroad Company (BN) brought this action against Gerald D. Bair, Director of the Department of Revenue and Finance of the State of Iowa (Director), seeking relief from discriminatory Iowa property taxes for the 1989 assessment year under Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the "4–R Act," codified at 49 U.S.C. § 11503) (1988). The District Court[1] granted relief and the Director appeals. We affirm the judgment of the District Court.

## I.

Since 1976, state property tax schemes, such as Iowa's, have been subject to the 4–R Act, which prohibits the discriminatory taxation of railroads. *See Burlington Northern R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 457, 107 S.Ct. 1855, 1857, 95 L.Ed.2d 404 (1987). The portion of the 4–R Act that is pertinent to this case reads as follows:

(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

(2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.

(3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(4) impose another tax that discriminates against a rail carrier providing transportation. . . .

49 U.S.C. § 11503(b)(1)–(4).

Iowa does not generally tax personal property, its personal property tax having been repealed effective July 1, 1987. *See* Iowa Code Ann. § 427A.10 (West 1990) (repealed 1994). Rather, Iowa imposes a property tax only on "real property" as defined by § 427A.1 of the Iowa Code. Section 427A.1 generally defines real property to include land, buildings and fixtures, and certain manufacturing machinery and computers. However, Iowa has denominated as real property *all* property of railroads and certain utilities, whether that property is in fact real or personal, tangible or intangible.[2] The totality of a railroad's "real property," as defined by § 427A.1, is centrally assessed by the Director and part of the resulting "unit value" is apportioned to Iowa. After various adjust-

---

* The HONORABLE MONROE G. McKAY, Senior United States Circuit Judge for the Tenth Circuit, sitting by designation.

1. The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa.

2. Specifically, all personal property of public utilities, telephone and telegraph companies, railroads, express companies, electric companies and pipeline companies is taxable as "real property." *See*, respectively, Iowa Code Ann. §§ 428.26; 433.4; 434.15; 436.7; 437.13; 438.13.

ments are made, the property then is subjected to taxation.

In prior litigation between the Director and BN, this Court held that under subsection (b)(4) Iowa was prohibited from treating BN's personal property as real property and thus depriving BN of various rollbacks and credits that were applicable to the personal property tax prior to its repeal. *Burlington Northern R. Co. v. Bair*, 766 F.2d 1222, 1224 (8th Cir.1985) (*Bair I*). In the present case, the District Court found that the Director's assessment of BN violated the 4–R Act and enjoined the Director from (1) assessing BN's real property at an assessed-value-to-true-market-value ratio exceeding the same ratio for other Iowa commercial and industrial real property in violation of section (b)(1); (2) adding the value of leased operating equipment to BN's unit value; (3) using a capitalization rate in the income approach to valuation lower than fourteen percent; and (4) taxing the value of certain BN intangible personal property (its computer software and assembled work force) in violation of section (b)(4).

In this appeal, the Director claims that following the Supreme Court's decision in *Department of Revenue of Oregon v. ACF Indus.*, —— U.S. ——, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994),[3] district courts are barred from considering subsection (b)(4) discrimination claims that are based on a state's grant of tax exemptions to certain taxpayers but not to others. Accordingly, the Director argues that the portion of the District Court's order which enjoins taxing the value of certain BN intangible personal property on the basis of a pre-*ACF* interpretation of subsection (b)(4) should be vacated. In addition, the Director claims that the District Court committed several errors in revising Iowa's valuation of BN's property under § 11503(b)(1).

## II.

We address first the Director's assertion that the Supreme Court's recent decision in *ACF* transformed the 4–R Act landscape by

barring exemption discrimination claims raised under § 11503(b)(4). The Director asserts that under *ACF*, the States are vested with plenary discretion to grant tax exemptions and that discrimination claims arising from such exemptions are not cognizable under subsection (b)(4). In the Director's view, Iowa's exemption from taxation of virtually all non-railroad personal property and its imposition of tax on the intangible personal property of only railroads and certain interstate utilities, was merely an exercise of the state's discretion. Accordingly, the Director contends that Iowa's tax scheme is permissible under *ACF*. We disagree.

In *ACF*, the State of Oregon had imposed an ad valorem tax upon all real and personal property within the state. 114 S.Ct. at 846. Oregon expressly exempted some property from the tax, including livestock, certain agricultural products and machinery, and non-farm business inventories. *Id.* Because railroad cars were not among the exempted items, ACF Industries, a company involved in leasing railroad cars to railroads and shippers, challenged Oregon's tax and the grant of exemptions as "another tax that discriminates against a rail carrier" in violation of subsection (b)(4) of the 4–R Act. *Id.* at ——–——, 114 S.Ct. at 846–47. The Supreme Court upheld Oregon's tax scheme, holding that "a State may grant exemptions from a generally applicable ad valorem property tax without subjecting the taxation of railroad property to challenge under the relevant provision of the 4–R Act." *Id.* at ——, 114 S.Ct. at 846; *see also, id.* at ——, ——, ——, 114 S.Ct. at 848, 850, 852. Having carefully reviewed the Supreme Court's decision in *ACF*, we conclude that the facts of the present case differ substantially from those found in *ACF*, and that *ACF* does not bar BN's claim.

■ We note at the outset that contrary to the Director's assertion, BN's claim cannot accurately be characterized as an exemption discrimination claim. Although the Director argues that a failure to tax non-railroad per-

---

**3.** This decision was handed down during the pendency of the Director's appeal prior to brief- ing.

sonal property is the equivalent of granting an exemption, we find this contention specious in light of the fact that, unlike the Oregon tax scheme in *ACF*, Iowa's scheme does not even impose a generally applicable tax on personal property. As noted above, Iowa Code § 427A.10 repealed Iowa's personal property tax effective July 1, 1987. Thus, the granting of exemptions, whether discriminatory or otherwise, is not at issue in this case.

Even if we were dealing with exemption discrimination, unlike the tax at issue in *ACF*, the tax which Iowa seeks to impose on railroads and a handful of other interstate concerns is, as we already have observed, not "generally applicable," a shortcoming that we conclude makes *ACF* inapposite here. While there is considerable disagreement between the parties as to the full import of *ACF*, we believe the Supreme Court's holding is best summed up in its statement, repeated three times in substantially the same language, that "[section] 11503 [ (b)(4) ] ... does not limit the States' discretion to exempt nonrailroad property, but not railroad property, from ad valorem property taxes of *general application*." *ACF*, —— U.S. at ——, 114 S.Ct. at 852 (emphasis added), *see also id.* at —— and ——, 114 S.Ct. at 846 and 848.

To understand the reach of the *ACF* holding, it is necessary to observe the inverse relationship between the term "exempt" and the phrase "general application." Practically speaking, if a state exempts sufficient property from a particular property tax, that tax no longer can be said to be one of general application. It follows that in the granting of tax exemptions, *ACF* permits the States something less than the unfettered discretion for which the Director argues. *See Ogilvie v. State Bd. of Equalization of hte State of North Dakota*, No. 83–80–1334, Mem. & Order at 5–7, 1995 WL 500472 (D.N.D. June 9, 1995). Were it otherwise, the anti-discrimination purpose of the 4–R Act could utterly be eviscerated by a state that ostensibly imposed a tax of general applicability but then systematically exempted all but a targeted few taxpayers.

The Supreme Court recognized this dilemma and addressed the contention that its interpretation of section 11503(b) "prohibits

discrimination of a mild form, but permits it in the extreme," —— U.S. at ——, 114 S.Ct. at 851, by carving an exception from its holding. The Court noted that "[*ACF* ] is not a case in which the railroads—either alone or as part of some isolated and targeted group—are the only commercial entities subject to an ad valorem property tax." *Id.* The Court further stated that *"[i]f such a case were to arise, it might be incorrect to say that the State 'exempted' the nontaxed property.* Rather, one could say that the State had singled out railroad property for discriminatory treatment." *Id.*

We conclude that Iowa's tax scheme fits within the narrow exception left open by the Supreme Court in *ACF*. Here, we believe Iowa has singled out for taxation all the personal property of railroads and a handful of interstate utilities, while leaving untaxed most of the personal property of every kind, and all the intangible personal property, of the vast majority of commercial and industrial enterprises in the state. The Supreme Court refrained specifically, in *ACF*, from deciding whether subsection (b)(4) would apply in such a case. *Id.* at ——, 114 S.Ct. at 852; *see also Ogilvie*, Mem. & Order at 4–7, 1995 WL 500472. We hold that in the circumstances here, subsection (b)(4) does apply to prohibit Iowa from taxing the intangible personal property of railroads since Iowa imposes this tax upon only a small, targeted group of businesses. Accordingly, we affirm that portion of the District Court's order enjoining the Director from taxing the value of BN's intangible personal property, namely BN's computer software and the value of its assembled work force.

We turn next to the Director's various claims of error by the District Court in revising Iowa's valuation of BN's property under section 11503(b)(1).

## III.

■ The Director contends that the District Court erred by requiring BN to prove only by a preponderance of the evidence, rather than by clear and convincing evidence, that BN's valuation of its property was correct. Section 11503(c) provides that the bur-

den of proof in determining assessed value and true market value is governed by state law. We held in *Bair I* that under Iowa law BN bears the burden of showing "by a *preponderance of the evidence* what the accurate values are," because that standard is the one generally applicable to civil proceedings. 766 F.2d at 1226. *See also Atchison, Topeka & Santa Fe Ry. v. Lennen,* 732 F.2d 1495, 1500 n. 4 (10th Cir.1984) (applying preponderance of the evidence standard based on Kansas law).

The Director continues to press the argument we rejected in *Bair I* that the appropriate burden of proof in cases brought under subsection (b)(1) is clear and convincing evidence. As we stated in *Bair I*, "an action under [§ 11503] is based on alleged discrimination and is not intended to be a review of an administrative valuation determination." *Id.* at 1226. Thus, the burden of proof required by Iowa in the context of other valuation proceedings before the Director has no place in a case arising under § 11503. We conclude that the District Court did not err in requiring BN to prove the correct valuation of its assets by a preponderance of the evidence.

## IV.

■ The Director also contends that the District Court erred in admitting BN's Exhibit 240C, a purported summary of BN's unit values as determined by other states. The Director contends that the exhibit was (1) inadmissible as a summary under Federal Rule of Evidence 1006; (2) inadmissible hearsay; and (3) evidence of compromise barred by Rule 408. We expedite our consideration of the Director's argument by assuming, without deciding, that admission of Exhibit 240C was improper for each of the reasons asserted by the Director. Nevertheless, "[e]rror may not be predicated upon a ruling which admits ... evidence unless a substantial right of the party is affected." Fed.R.Evid. 103(a). Accordingly, we will reverse the District Court only if the Director's substantial rights were affected. We conclude that they were not.

The Director argues that admission of Exhibit 240C "significantly influenced" the Dis-

trict Court's valuation of BN. Director's Brief at 20. Having reviewed the District Court's ruling and order, we disagree. After devoting no less than fifteen pages to an analysis of the valuation of BN, the District Court in a footnote confessed to deriving "some comfort from the fact that this determination of fair market value is well within the range determined by seven other midwestern states." *Burlington Northern R.R. Co. v. Bair,* No. 4:90CV–60406 Ruling and Order at 27 n. 10 (S.D. Iowa March 7, 1993). This statement suggests that the influence of Exhibit 240C on the District Court fell far short of "significant." We are satisfied that the District Court would have reached the same conclusion regarding BN's value whether or not it considered Exhibit 240C. Inasmuch as the Director has not shown any prejudice to his substantial rights as a result of the District Court's admission of Exhibit 240C, the Director's claim must fail.

## V.

The Director challenges the capitalization rate used by the District Court in determining BN's value under the income approach. The Director argues that the capitalization rate adopted by the District Court resulted from application of an improper burden of proof and an improper consideration of Exhibit 240C. Because we have already concluded that the District Court applied the correct burden of proof and was not significantly influenced by Exhibit 240C, the Director's claim is without merit.

## VI.

■ The Director next argues that the District Court erred in enjoining the Director from assessing to BN the owner's interest in leased operating property. The Director contends that under Iowa law, tax on the value of leased operating property—in this case locomotives, railcars and computers—must be borne by the lessee-railroad rather than the owner of such property. We agree. However, the District Court found that the tax on leased operating property already was assessed to BN because the value of that leased operating property was included in

BN's unit value as determined by the Director. Having reviewed the record, we are satisfied that the District Court's finding is not clearly erroneous. *See* Fed.R.Civ.P. 52(a). Accordingly, the District Court's order enjoining the Director from re-assessing the value of BN's leased operating equipment is proper and is consistent with Iowa law.

## VII.

We have carefully considered the Director's remaining arguments and find them to be without merit. The judgment of the District Court is affirmed.