In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1741

UNION PACIFIC RAILROAD COMPANY,

*Plaintiff-Appellee,*

*v.*

WISCONSIN DEPARTMENT OF REVENUE,
*et al.,*

*Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 17-cv-00897 — **William M. Conley**, *Judge.*

ARGUED SEPTEMBER 17, 2019 — DECIDED OCTOBER 7, 2019

Before FLAUM, ROVNER, and SCUDDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* The Wisconsin Department of Revenue (the "Department") disallowed the Union Pacific Railroad Company ("Union Pacific") from claiming a property tax exemption for the value of its custom computer software, which under Wisconsin law is a type of intangible personal property. Union Pacific refused to pay the tax on its custom

software and filed suit, arguing that the tax singles out railroads as part of an isolated and targeted group in violation of Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the "4-R Act"), codified at 49 U.S.C. § 11501(b)(4) ("subsection (b)(4)"). The defendants contend that Wisconsin is permitted to grant non-railroads an exemption from its generally applicable ad valorem property tax scheme for intangible property, even if railroads do not qualify for the same exemption. The intangible property tax, however, exempts everyone except for an isolated and targeted group of which railroads are a part. The district court entered summary judgment for Union Pacific. We affirm.

## I. Background

Chapter 70 of the Wisconsin Tax Code ("the Code") governs the taxation of manufacturing and commercial companies aside from railroad and utilities companies. Chapter 76 governs the taxation of railroad and utilities companies, including air carriers, pipeline companies, and water conservation and regulation companies. Wis. Stat. §§ 76.01–76.02. Taxpayers under chapters 70 and 76 must pay taxes on their real and personal property unless that property is exempt.

The Code contains several exemptions from the general property tax for various classes of property, including an exemption for "all intangible personal property," which covers custom computer software. Wis. Stat. § 70.112(1). Manufacturing and commercial taxpayers generally qualify for the intangible personal property exemption, but railroad and utilities companies do not. *Compare id.*, *with* Wis. Stat. § 76.025(1). The parties do not dispute that railroad and utilities companies are the only taxpayers that Wisconsin requires to pay taxes on their intangible property, including custom software.

For several years, Union Pacific claimed the value of its custom software as exempt under Wis. Stat. § 70.11(39), which applies to computers and certain types of software; however, that exemption expressly does not cover *custom* software. The Department audited Union Pacific and concluded that, for the years 2014 and 2015, it owed $2,631,104.77 in back taxes and interest after disallowing Union Pacific's deduction of its custom software. Union Pacific filed suit against the Department and its secretary,[1] contending that Wisconsin's tax on Union Pacific's custom software violates subsection (b)(4) of the 4-R Act.

The district court entered summary judgment for Union Pacific, concluding that because railroads are "the only entities in Wisconsin who are taxed for their intangible personal property -- including custom computer software," the tax on intangible personal property "is *not* one of general applicability, but rather is one that appears to fall squarely, if not entirely, on railroads 'as part of some isolated and targeted group.'" The defendants now appeal, arguing that Wisconsin is permitted under subsection (b)(4) to grant exemptions from its generally applicable ad valorem tax scheme, even if those same exemptions are denied to railroads.

## II. Discussion

This case comes to the Court on appeal of the district court's ruling on cross-motions for summary judgment with

---

[1] Wisconsin's current Secretary of Revenue, Peter Barca, has been substituted as a defendant for his predecessor, Richard Chandler.

no disputed material facts. Accordingly, we review the district court's legal conclusions de novo. *State Auto Prop. & Cas. Ins. Co. v. Brumitt Servs., Inc.*, 877 F.3d 355, 357 (7th Cir. 2017).

### A. The 4-R Act

Union Pacific asserts that Wisconsin "[i]mposes another tax that discriminates against a rail carrier" in violation of 49 U.S.C. § 11501(b)(4) ("subsection (b)(4)") by taxing railroads' custom computer software while exempting custom computer software for other taxpayers. The 4-R Act provides that states and their subdivisions may not:

(1) [a]ssess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property[;]

(2) [l]evy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection[;]

(3) [l]evy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction[; or]

(4) [i]mpose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Board under this part.

49 U.S.C. § 11501(b). Railroads "are easy prey for State and local tax assessors in that they are nonvoting, often nonresident, targets for local taxation, who cannot easily remove themselves from the locality." *W. Air Lines, Inc. v. Bd. of Equalization of State of S.D.*, 480 U.S. 123, 131 (1987) (citation and internal quotation marks omitted). The 4-R Act "restricts the ability of state and local governments to levy discriminatory taxes on rail carriers." *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 280 (2011).

In *Dep't of Revenue of Or. v. ACF Indus., Inc.*, railroad car lines brought a 4-R Act challenge to Oregon's tax scheme, which exempted several classes of non-railroad property but did not exempt railroad cars. 510 U.S. 332, 335 (1994). The Supreme Court held that a tax upon railroad property is not "subject to challenge under subsection (b)(4) on the ground that certain other classes of commercial and industrial property are exempt." *Id.* at 338–39. The Court went on to explain that the case was not one

> in which the railroads—either alone or as part of some isolated and targeted group—[were] the only commercial entities subject to an ad valorem property tax.… If such a case were to arise, it might be incorrect to say that the state "exempted" the nontaxed property. Rather, one could say that the State had singled out railroad property for discriminatory treatment.

*Id.* at 346–47. In providing this explanation, the Court cited *Burlington N. R.R. Co. v. City of Superior*, 932 F.2d 1185 (7th Cir. 1991), as an example of a case where a rail carrier was one of the only commercial entities singled out for discriminatory treatment. *ACF*, 510 U.S. at 346. The tax challenged in *City of*

*Superior* was an occupational tax imposed on "owners and operators of iron ore concentrates docks." 932 F.2d at 1186 (internal quotation marks omitted). Although the tax was framed broadly, in practical effect it applied only to the one railroad company that operated the only three such docks in the state. *Id.* Because the state was "levying a tax on an activity in which, in Wisconsin anyway, only railroads engage," the iron ore docks tax could not stand. *Id.* at 1188.

The *ACF* holding does not apply, therefore, where the "actual tax levied is a general tax in name only and is in fact a tax on railroads" or a targeted group of which railroads are a part. *Burlington N. R.R. Co. v. Wis. Dep't of Revenue*, 59 F.3d 55, 58 & n.2 (7th Cir. 1995). Notwithstanding the *ACF* holding, subsection "(b)(4) might be violated if a railroad was 'singled out' for unfavorable treatment in the form of inability to benefit from property tax exemptions given to other taxpayers." *CSX Transp., Inc. v. S.C. Dep't of Revenue*, 851 F.3d 320, 331 (4th Cir. 2017). Indeed, "[t]he most obvious form of tax discrimination is to impose a tax on a class of rail transportation property that is not imposed on other nonrailroad property of the same class." *Ogilvie v. State Bd. of Equalization of State of N.D.*, 657 F.2d 204, 210 (8th Cir. 1981).

Following *ACF*, two of our sister circuits have held that intangible personal property taxes that were imposed on targeted and isolated groups of which railroads were a part ran afoul of subsection (b)(4). In *Burlington N. R.R. Co. v. Huddleston*, the Tenth Circuit considered Colorado's intangible property tax exemption, concluding that "[u]nlike the tax exemption at issue in *ACF*, Colorado's intangible property tax exemption applies to *all* commercial and industrial taxpayers other than 'public utilities,'" thereby "singl[ing] out Plaintiff

as part of an 'isolated and targeted group' for discriminatory tax treatment in violation of [subsection (b)(4)]." 94 F.3d 1413, 1417 (10th Cir. 1996), *abrogated in part on other grounds by Ala. Dep't of Revenue v. CSX Transp., Inc.*, 135 S. Ct. 1136, 1141 (2015). Similarly, in *Burlington N. R.R. Co. v. Bair*, the Eighth Circuit held that Iowa's intangible personal property tax violated subsection (b)(4) because it was imposed only "on railroads and a handful of other interstate concerns" and therefore was not "generally applicable." 60 F.3d 410, 413 (8th Cir. 1995).[2]

### B. Wisconsin's Intangible Property Tax

Wisconsin's intangible personal property tax singles out railroads as part of a targeted and isolated group in violation of subsection (b)(4). What Wisconsin refers to as its "generally applicable property tax" is, functionally, generally applicable only to real and *tangible* personal property. Manufacturing and commercial companies generally must pay property taxes on the value of their real and tangible personal property. Only railroad and utilities companies, however, are required to pay an additional tax on their *intangible* property. Hence, Wisconsin does not simply exempt intangible property from taxation; rather, it imposes an intangible property tax only on railroad and utilities companies. The intangible property tax

---

[2] Also, a district court in Oregon recently held that Oregon's intangible personal property tax violated subsection (b)(4) because "intangible personal property [was] *not* subject to taxation *except* for property owned by" one of fourteen categories of taxpayers, including railroads. *BNSF Railway Co. v. Or. Dep't of Revenue*, 358 F. Supp. 3d 1129, 1138 (D. Or. 2018), *appeal docketed*, No. 19-35184 (9th Cir. Mar. 7, 2019). An appeal of that decision is now pending in the Ninth Circuit.

"exemption"—for which railroad and utilities companies categorically do not qualify—reflects and operates as "another tax that discriminates against a rail carrier" within the meaning of subsection (b)(4) and thereby offends the 4-R Act.

*ACF* does not foreclose Union Pacific's claim because the question before the Court there was "[w]hether a tax upon railroad property is even subject to challenge under subsection (b)(4) on the ground that certain *other* classes of commercial and industrial property are exempt." 510 U.S. at 338–39 (emphasis added). Here, the challenge is to the *same* class of property being taxed differently based on the owner's membership in a targeted and isolated group.

Moreover, the *ACF* holding does not apply where the "exemption" is just a pretext for targeting railroads, either alone or as part of an isolated group. "Practically speaking, if a state exempts sufficient property from a particular property tax, that tax no longer can be said to be one of general application." *Bair*, 60 F.3d at 413. Otherwise, "the anti-discrimination purpose of the 4-R Act could be utterly eviscerated by a state that ostensibly imposed a tax of general applicability but then systematically exempted all but a targeted few taxpayers." *Id.* Wisconsin systematically exempts from its intangible property tax all manufacturing and commercial taxpayers except for railroad and utilities companies.

The effect of the intangible property tax challenged here is functionally similar to that of the iron ore concentrates docks tax the Supreme Court cited in *ACF* as an example of a tax that runs afoul of subsection (b)(4), *see City of Superior*, 932 F.2d at 1188, and the taxes courts have regularly struck down under subsection (b)(4) since the *ACF* decision, *see, e.g.*, *Huddleston*, 94 F.3d at 1417; *Bair*, 60 F.3d at 413; *BNSF*, 358 F. Supp.

3d at 1138. The common defect with those taxes was that they went beyond the state's generally applicable tax by imposing an additional tax on railroads or a targeted and isolated group of which railroads were a part.

The defendants' reliance on our decision in *Burlington N. R.R. Co. v. Wis. Dep't of Revenue*, 59 F.3d 55 (7th Cir. 1995), is misplaced. In that case, we noted that even though 80% of non-railroad property was exempt from taxation under Wisconsin's property tax scheme, railroads bore only a small proportion of the overall property tax burden. *Id.* at 57–58. Wisconsin's entire property tax scheme was therefore not a "nominally general tax which is in fact a tax only on railroads," and *ACF* precluded the plaintiff's claim that Wisconsin's taxation of railroad property altogether violated subsection (b)(4). *Id.* We did not, however, consider a challenge to the particular property tax at issue here. The question here is whether Wisconsin's intangible property tax singles out railroads as part of a targeted and isolated group in violation of subsection (b)(4). We hold that it does.

"It is now well established that a showing that the railroads have been targeted is enough to prove discrimination." *Kan. City S. Railway Co. v. Koeller*, 653 F.3d 496, 510 (7th Cir. 2011). The defendants have not provided a non-discriminatory justification for imposing a targeted tax on the intangible property of railroad and utilities companies, nor have they contested the district court's conclusion that the railroad and utilities companies as defined in the Code are a targeted and isolated group.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.