FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BNSF RAILWAY COMPANY, a Delaware corporation, *Plaintiff-Appellee*, <br><br> v. <br><br> OREGON DEPARTMENT OF REVENUE; SATISH UPADHYAY, in his official capacity as Acting Director of the Oregon Department of Revenue, *Defendants-Appellants.* | No. 19-35184 <br><br> D.C. No. 3:17-cv-01716-JE <br><br> OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted May 15, 2020
Portland, Oregon

Filed July 8, 2020

Before: Jay S. Bybee and Lawrence VanDyke, Circuit
Judges, and Vince Chhabria,[*] District Judge.

---

[*] The Honorable Vince Chhabria, United States District Judge for
the Northern District of California, sitting by designation.

Opinion by Judge VanDyke;
Concurrence by Judge Chhabria

**SUMMARY**[**]

**Rail Carriers**

The panel affirmed the district court's grant of summary judgment in favor of BNSF Railway Co., a rail carrier that challenged the Oregon Department of Revenue's imposition of a tax on its intangible personal property, such as accounting goodwill.

Agreeing with other circuits, the panel held that BNSF could challenge the property tax under the Railroad Revitalization and Regulatory Reform Act, known as the 4-R Act, which prohibits taxes that discriminate against rail carriers. The panel rejected the argument that tax was generally applicable and that BNSF's challenge was no more than a demand for exemptions offered to other taxpayers. The panel held that the proper comparison class for BNSF was Oregon's commercial and industrial taxpayers, and the intangible personal property tax assessment discriminated against BNSF in violation of the 4-R Act, 49 U.S.C. § 11501(b)(4).

Concurring, District Judge Chhabria wrote that he joined the opinion in full. He wrote separately to emphasize the point that the Oregon Department of Revenue failed to argue that the tax was not discriminatory, either by contesting that

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

locally assessed taxpayers are similarly situated with respect to intangible personal property or by offering a justification for taxing the intangible personal property of one group and not the other.

---

**COUNSEL**

Paul L. Smith (argued), Deputy Solicitor General; Benjamin Gutman, Solicitor General; Ellen F. Rosenblum, Attorney General; Office of the Attorney General, Salem, Oregon; for Defendants-Appellants.

Benjamin J. Horwich (argued) and Teresa A. Reed Dippo, Munger Tolles & Olson LLP, San Francisco, California, for Plaintiff-Appellee.

---

**OPINION**

VANDYKE, Circuit Judge:

Oregon law generally taxes real and tangible personal property situated within its borders. But certain commercial and industrial entities, including railroads and other interstate concerns, must also pay taxes on their intangible personal property. For the first time in 2017, Oregon's Department of Revenue began including BNSF Railway Company's (BNSF) intangible personal property in the railway's property value assessments, which resulted in a tax liability thirty percent higher than the previous year. BNSF filed suit under the Railroad Revitalization and Regulatory Reform Act of 1976, Pub. L. No. 94-210, § 306, 90 Stat. 31 ("4-R Act"), alleging the tax on its intangible personal

property is "another tax that discriminates against a rail carrier." 49 U.S.C. § 11501(b)(4).

The district court ruled that BNSF could challenge the property tax under 49 U.S.C. § 11501(b)(4), that the proper comparison class for BNSF was Oregon's commercial and industrial taxpayers, and that the intangible personal property tax assessment discriminated against BNSF in violation of the 4-R Act.  For the reasons below, we affirm.

## I.

## A.

Congress adopted the 4-R Act to restore railroads' financial stability, harmed at least in part by states' and localities' abusive tax practices.  *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 336 (1994).  Railroads have long been "attractive targets for state and local taxing authorities . . . [because] it is very difficult for railroads to escape . . . political[ly] exploit[ive]" tax schemes that capitalize upon their nonvoting, nonresident, immobile presence in their jurisdictions.  *Burlington N. R.R. Co. v. City of Superior*, 932 F.2d 1185, 1186 (7th Cir. 1991).  The 4-R Act was "an effort to lift from their backs some of the heavy hand of state and local taxation."  *Id.*  Under the Act, States may not "unreasonably burden and discriminate against interstate commerce" by doing any of the following things:

> (1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true

market value of the other commercial and industrial property.

(2) Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.

(3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(4) Impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Board under this part.

49 U.S.C. § 11501(b). BNSF brings this challenge under § 11501(b)(4).

**B.**

All real and tangible personal property—but not *intangible* personal property—situated within Oregon is subject to assessment and taxation by county assessors. Or. Rev. Stat. §§ 307.030 & 308.210(1). The property of railroads and thirteen other industries, however, is centrally taxed by the Oregon Department of Revenue (Department). *Id*. § 308.515(1)(a).[1] Unlike all other commercial and

---

[1] All fourteen generally assessed taxpayer categories relate to transportation, energy, and utilities; six of the fourteen specifically mention the rail industry. OR. REV. STAT. § 308.515(1). For tax year 2017-2018, there were approximately 513 centrally assessed companies

industrial Oregon taxpayers, these industries pay taxes on their *intangible* personal property in addition to their tangible property. *Id*. § 308.505(14)(a). To "arriv[e] at the assessed value of the [centrally assessed] property," the Department "value[s] the entire property, both within and without the State of Oregon, as a unit." *Id*. § 308.555. The Department uses two different methods to valuate property: Real Market Value (RMV) and Maximum Assessed Value (MAV), which is limited to 100 percent of the previous year's MAV or 103 percent of the property's assessed value from the previous year. *Id*. § 308.146(1). The assessed value of the property and the basis for the taxpayers' liability is the lesser of the RMV and MAV. *Id*. § 308.146(2). The Department then evaluates several factors to determine what percentage of the total valuated property is taxable in Oregon. *Id*. § 308.555; Or. Admin. R. 150-308-0670. Finally, the Department apportions that taxable value to the pertinent Oregon counties, which collect the tax payments. Or. Admin. R. 150-308-0670.

## C.

Intangible personal property includes accounting goodwill, *see* Or. Admin. R. 150-307-0020, and in 2010, BNSF acquired a lot of it—about $14.8 billion—when Berkshire Hathaway overpaid for all of BNSF's remaining shares. From 2011 to 2016, the Department did not include the accounting goodwill in its calculation of BNSF's MAV. But in 2017, the Department included the $14.8 billion goodwill, as well as $637 million of other intangible

---

in Oregon, compared to more than 400,000 locally assessed companies. *See* Or. Sec'y of State, Business Report (Jan. 2018), https://sos.oregon.gov/business/Documents/business-reports-past/2018.pdf.

personal property, in its calculation of BNSF's RMV *and* MAV, which increased BNSF's assessed value and tax liability by approximately 30 percent.

Railroaded by this unforeseen tax liability, BNSF filed suit on October 27, 2017. It sought a declaratory judgment that Oregon's property tax on its intangible personal property violated 49 U.S.C. § 11501(b)(4) and injunctive relief barring the Department from assessing and collecting taxes on BNSF's intangible personal property.

The case was assigned to a magistrate judge, and the parties stipulated to the facts, agreeing that no material facts remained in dispute. They then filed cross motions for summary judgment. After a hearing, the magistrate issued Findings and Recommendations that the Department's summary judgment motion should be granted and BNSF's denied. Reversing course, the district court declined to adopt the magistrate's Findings and Recommendations, instead granting BNSF's motion and denying the Department's.

The district court held that "[b]ecause the Oregon tax statute here . . . singles out railroads as part of a small group for different and unfavorable tax treatments compared to all other commercial and industrial taxpayers, . . . [t]his constitutes discrimination against railroads that is prohibited by the 4-R Act." Specifically, the district court found "there is no generally applicable intangible property tax in Oregon." On that basis, it concluded that BNSF's challenge to the Oregon tax scheme under 49 U.S.C. § 11501(b)(4) was not barred by *ACF*. *See ACF*, 510 U.S. at 335 (holding railroads could not challenge as discriminatory a generally applicable property tax to which some non-railroad property, but not railroad property, was exempted). In so doing, the district court rejected an argument peddled by the Department for nearly three decades—that railroads may not

challenge property taxes under § 11501(b)(4). *See id*. at 339. Finally, the district court rejected an argument the Department raised for the first time at oral argument: that BNSF failed to establish Oregon's centrally assessed taxpayers are isolated and targeted enough to show discrimination. Essentially, the Department was requesting further factual development after both parties had repeatedly averred to the absence of disputed material facts. The district court found that the argument was waived and lacked merit. On February 12, 2019, the district court entered judgment granting BNSF's requested declaratory and injunctive relief but stayed the judgment pending appeal pursuant to the parties' stipulation. The Department timely appealed.

## II.

The district court had jurisdiction pursuant to 49 U.S.C. § 11501(c), and this Court has jurisdiction under 28 U.S.C. § 1291. We review de novo "the district court's decision on cross-motions for summary judgment," *U.S. Sec. & Exch. Comm'n v. Hui Feng*, 935 F.3d 721, 728 (9th Cir. 2019), as well as its interpretation of a statute. *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 923 (9th Cir. 2010). Here, the parties agree no material facts are disputed, so we "ask only whether the district court correctly applied the relevant substantive law." *CHoPP Comput. Corp. v. U.S.*, 5 F.3d 1344, 1346 (9th Cir. 1993).

## III.

On appeal, the Department levies three principal arguments: first, that Supreme Court precedent forecloses railroads' ability to challenge *any* property tax scheme under 49 U.S.C. § 11501(b)(4); second, that this dispute is similar to and resolved by *ACF* because Oregon's tax on BNSF's

intangible personal property is, in reality, a generally applicable tax on intangible personal property from which all but centrally assessed taxpayers are exempted; and third, that BNSF has not otherwise proven discrimination. We consider each of these arguments in turn.

## A.

We begin by examining *ACF*, for, as the district court noted, each party attempts to ride that case to its desired terminus. In *ACF*, a group of railway car leasing companies sued under 49 U.S.C. § 11501(b)(4) to challenge Oregon's assessment of taxes upon their railroad cars, considered tangible personal property in Oregon. 510 U.S. at 335–36. The *ACF* plaintiffs complained the tax was discriminatory "because it exempts certain classes of commercial and industrial property while taxing railroad cars in full." *Id.* at 337. Essentially, the *ACF* plaintiffs believed anything less than most-favored taxpayer status amounted to unlawful discrimination under § 11501(b)(4). *Id.* at 338–39. The Department—then as now—argued the structure of § 11501(b) eliminated the ability to challenge *any* property tax under § 11501(b)(4). *Id.* at 339. Because subsections (b)(1)–(3) prohibit certain types of discriminatory *property* tax practices, the Department reasoned that Congress must have intended subsection (b)(4)'s "another tax" to refer to *non-property* taxes. *Id.* at 339. Though "defensible if . . . read in isolation," the Supreme Court rejected the Department's preferred statutory construction and upheld the tax on other grounds. *Id.* at 339–40.

First, the *ACF* Court reasoned that "commercial and industrial property" was the proper comparison class for purposes of determining whether tax treatment is discriminatory. *Id.* at 335. The statute defines "commercial and industrial property" to be "property . . . devoted to a

commercial or industrial use and subject to a property tax levy." 49 U.S.C. § 11501(a)(4). The Court reasoned that "property 'subject to a property tax levy' means property that is *taxed* [as opposed to *taxable*, so] the definition of 'commercial and industrial property' excludes property that is exempt." *ACF*, 510 U.S. at 342 (emphasis added). In other words, a railroad cannot generally claim discrimination if it is forced to pay a generally applicable tax from which some of its comparators are exempted. *Id*. at 340–42. Federalism principles supported the Court's interpretation, for States have long enjoyed the power to effectuate policy by means of granting or withholding tax exemptions. *Id*. at 345. The Court therefore held that § 11501(b)(4) "does not limit the States' discretion to exempt nonrailroad property, but not railroad property, from ad valorem property taxes of general application." *Id*. at 347–48.

The *ACF* Court acknowledged "that tax exemptions, as an abstract matter, could be a variant of tax discrimination," *id*. at 343, yet presciently observed:

> this is not a case in which the railroads— either alone or as part of some isolated and targeted group—are the only commercial entities subject to an ad valorem property tax. If such a case were to arise, it might be incorrect to say that the State "exempted" the nontaxed property. Rather, one could say that the State had singled out railroad property for discriminatory treatment.

*Id*. at 346–47 (citation omitted). BNSF contends this is just "such a case." *Id*. at 346.

The Department insists that railroads may not challenge any property taxes under 49 U.S.C. § 11501(b)(4) and

believes a subsequent 4-R Act case supports its position.  In *CSX Transportation, Inc. v. Alabama Department of Revenue* (*CSX I*), 562 U.S. 277 (2011), the Supreme Court permitted a railroad to challenge under § 11501(b)(4) Alabama's sales and use taxes from which the railroad's main competitors were exempted.  *Id*. at 280–82.  Alabama argued, per *ACF*, that railroads could not challenge any discriminatory tax *exemptions* under § 11501(b)(4).  *Id*. at 289.  The *CSX I* Court rejected that argument, *id*. at 290, but elsewhere used language the Department attempts to rely upon here.

The Department first directs us to the *CSX I* Court's explanation that the Alabama sales and uses taxes could be challenged under § 11501(b)(4): "[A]nother tax," as used in subsection (b)(4), "is best understood to . . . encompass any form of tax a State might impose, on any asset or transaction, *except the taxes on property previously addressed in subsections (b)(1)–(3)*."  *Id*. at 285 (emphasis added).  Next, the Department points to *CSX I*'s description of *ACF*'s holding: "The structure of § 11501 thus compelled our conclusion [in *ACF*] that property tax exemptions—even if a variant of tax discrimination—fell outside subsection (b)(4)'s reach."  *Id*. at 291 (internal citation and quotation marks omitted).  From these statements the Department gleans a rule: that the Supreme Court has concluded Congress fully defined all available property tax challenges in §§ 11501(b)(1)–(3) and has therefore definitively foreclosed *any* challenges to discriminatory property taxes under § 11501(b)(4).

But that's not what *CSX I* held or said; nor does it follow logically from the two excerpted passages above.  *CSX I* (and *ACF*) focused on whether the 4-R Act allowed challenges to States' discriminatory tax *exemption* arrangements.  *CSX I*'s

description of "another tax" encompassing virtually anything "except the taxes on property previously addressed in subsections (b)(1)–(3)," 562 U.S. at 285, unremarkably states the obvious: "another tax" must mean some form of tax treatment other than the specific "discriminatory tax rates and assessment ratios" prohibited by subsections (b)(1)–(3). *ACF*, 510 U.S. at 343. Nothing in the *CSX I* Court's opinion suggests that § 11501(b)(4)'s "another tax" excludes other species of discriminatory property taxes not covered by the previous subsections. In fact, the immediate context of the *CSX I* language invoked by the Department clearly states otherwise: "'[A]nother tax,' as used in subsection (b)(4), is best understood to refer to all of these" "forms of taxation on *property*, income, transactions, or activities." *CSX I*, 562 U.S. at 285 (emphasis added). *CSX I* rather explicitly acknowledged that discriminatory property taxes were reachable under § 11501(b)(4).

The Department's second *CSX I* excerpt reaffirms this point and merely restates *ACF*'s holding—that "property tax *exemptions* . . . fell outside subsection (b)(4)'s reach." *Id.* at 291 (emphasis added) (quoting *ACF*, 510 U.S. at 343). As explained above, *ACF* acknowledged property tax *exemptions* were, by nature, discriminatory tax practices; but the Court deemed them permissible due to "[t]he structure of [§ 11501] as a whole." 510 U.S. at 340. Because tax-exempt property could not be a proper comparison class for measuring discrimination under § 11501(b)(1)–(3), it likewise could not constitute the discrimination § 11501(b)(4) prohibits. *See id.* ("[S]ubsection (b)(4) [cannot be read] to prohibit what subsection (b)(3), in conjunction with subsection (a)(4), was designed to allow."). The Department fixates upon the word "property" in the above *CSX I* excerpt and asks us to ignore the word "exception." Unfortunately for the Department, we cannot

unsee it.  Nothing in *CSX I* closed the door *ACF* left open.
Under   § 11501(b)(4),   railroads   may   challenge
discriminatory property taxes—even those masquerading as
tax exemptions.**[2]**  *ACF*, 510 U.S. at 346–47.

Every other federal court that has faced this issue agrees.
In *Burlington Northern Railroad Co. v. Bair*, 60 F.3d 410,
413 (8th Cir. 1995), the Eighth Circuit treated an Iowa tax
that "fit[] within the narrow exception left open by the
Supreme Court in *ACF*."  There, Iowa repealed its generally
applicable personal property tax and retained its real
property tax; the State, however, "denominated as real
property *all* property of railroads and certain utilities,
whether that property is in fact real or personal, tangible or
intangible." *Id*. at 411.  The tax "singled out for taxation all
the personal property of railroads and a handful of interstate
utilities, while leaving untaxed most personal property of
every kind, and all intangible personal property, of the vast
majority of commercial and industrial enterprises in the
state." *Id*. at 413.  The Eight Circuit rejected Iowa's attempt
to cast the railroad's challenge as "an exemption
discrimination claim" foreclosed by *ACF*.  *Id*. at 412; *see
also id*. at 413 ("Iowa's scheme does not even impose a
generally applicable tax on personal property.").  *Bair*

---

**[2]** We concluded as much in *Atchison, Topeka & Santa Fe Ry. Co. v.
Ariz*ona, 78 F.3d 438, 441 (9th Cir. 1996) ("We hold that subsection
(b)(4) of the 4-R Act is designed to encompass all discriminatory state
taxes, *not just discriminatory property taxes* or in lieu taxes.").  But our
negatively phrased holding—as it relates to property taxes—is probably
dicta, for *Atchison* fielded a challenge to privilege and use taxes, not a
property tax.  Plus, *Atchison* only got it half right, concluding that
property taxes were challengeable under 49 U.S.C. § 11501(b)(4), but
overreading *ACF* to permit all exemption-based discrimination, even that
arising in non-property tax contexts.  *Id*. at 443.  As discussed, *CSX I*
rejected this misapplication of *ACF*.  562 U.S. at 289–91.

recognized that, "[p]ractically speaking, if a state exempts sufficient property from a particular property tax, that tax no longer can be said to be one of general application." *Id*. at 413 (reasoning that "the anti-discrimination purpose of the 4-R Act could utterly be eviscerated" if the States had "unfettered discretion" "in the granting of tax exemptions"); *see also Ogilvie v. State Bd. of Equalization of State of N.D.*, 893 F. Supp. 882, 886 (D.N.D. 1995) (holding that subsection (b)(4) prohibited a North Dakota personal property tax scheme that exempted all taxpayers "except . . . centrally assessed businesses" including railroads and other utilities (internal quotation marks omitted).

In *Burlington Northern Railroad Co. v. Huddleston*, 94 F.3d 1413, 1414 (10th Cir. 1996), the Tenth Circuit considered a Colorado tax law that generally exempted the value of intangible personal property for all taxpayers except public utilities, which included railroads. Like the district court in *Ogilvie*, the court "reject[ed Colorado's] assertion that no property tax exemption, regardless of its nature or effect, is subject to challenge under" § 11501. *Id*. at 1417 (quotation marks omitted). Differentiating *Huddleston* from *ACF*, the court stated, "[u]nlike the tax exemption at issue in *ACF*, Colorado's intangible property tax exemption applies to all commercial and industrial taxpayers other than 'public utilities.'" *Id*. The court concluded such tax treatment violated § 11501(b)(4). *Id*.

While the parties briefed this case on appeal, the Seventh Circuit tracked the other federal courts, ruling that "Wisconsin's intangible property tax singles out railroads as part of a targeted and isolated group in violation of subsection (b)(4)." *Union Pacific R.R. Co. v. Wis. Dep't of Revenue*, 940 F.3d 336, 341 (7th Cir. 2019), *cert. denied*, 2020 WL 2105267 (May 4, 2020) (mem.). Wisconsin's code

exempts from taxation "all intangible personal property." *Id*. at 338 (quoting Wis. Stat. § 70.112(1)).  But railroads and utilities do not qualify for the exemption, making them the lone Wisconsin taxpayers whose intangible personal property—including the railroad's valuable custom software—was subject to taxation. *Id*.  Like the Department here, Wisconsin likened its scheme to the one *ACF* upheld, *id*. at 339–40, and simply asserted that railroads did not qualify for an exemption from its "generally applicable property tax." *Id*. at 340.  But the court refused to be sidetracked: "Wisconsin does not simply exempt intangible property from taxation; rather, it imposes an intangible property tax only on railroad and utilities companies." *Id*. The court remarked that "*ACF* does not foreclose [the] claim because," in the Wisconsin situation, "the challenge is to the *same* class of [intangible personal] property being taxed differently based on the owner's membership in a targeted and isolated group." *Id*. at 340–41.  The court found that *ACF* offers no protection "where the 'exemption' is just a pretext for targeting railroads, either alone or as part of an isolated group." *Id*. at 341.  In other words, States cannot blow smoke when taxing those that do.

In two cases, the Fourth Circuit has reached the same result. *CSX Transp., Inc. v. S.C. Dep't of Revenue*, 851 F.3d 320, 324 (4th Cir. 2017) (holding that railroad could challenge as "another tax" under § 11501(b)(4) the deprivation due to its tax classification of an appraised value increase cap); *CSX Transp., Inc. v. S.C. Dep't of Revenue*, 959 F.3d 622, 633–34 (4th Cir. 2020) (holding that the State's withholding of the appraised value increase cap was unjustifiably discriminatory per § 11501(b)(4)).

*Bair*, *Ogilvie*, *Huddleston*, *Union Pacific*, and *South Carolina Department of Revenue* all travel in the same

direction, uniformly supporting BNSF's position that it may challenge a discriminatory *property* tax under 49 U.S.C. § 11501(b)(4). These cases also demonstrate that even if the instant tax treatment could be fairly characterized as discrimination-by-tax-*exemption*, BNSF's § 11501(b)(4) challenge would fit comfortably through the roundhouse door *ACF* expressly propped open. *See* 510 U.S. at 346 (describing "a case in which the railroads—either alone or as part of some isolated and targeted group—are the only commercial entities subject to an ad valorem property tax"). Such a tax scheme is not really an exemption at all, but merely a discriminatory tax in disguise.[3] *Id.* at 346–47.

We join the Fourth, Seventh, Eighth, and Tenth Circuits and hold that challenges to discriminatory property taxes may proceed under 49 U.S.C. § 11501(b)(4).

## B.

The Department doggedly insists its intangible personal property tax is "generally applicable" and that BNSF's challenge is no more than a demand for exemptions offered to other taxpayers, like the unsuccessful challengers in *ACF*. Indeed, this approach appears to be the Department's principal litigation strategy. Yet the district court rejected it,

---

[3] The Department continues to argue on appeal that *ACF* deemed Oregon's entire property tax "system" nondiscriminatory under the 4-R Act. Yet *ACF* resolved a challenge to Oregon's tax on railroad cars, which Oregon law classifies as "tangible personal property." 510 U.S. at 335. *This* was the property tax the Court referenced when it concluded: "On the record before us, Oregon's ad valorem property tax does not single out railroad property [for discriminatory treatment] . . . ." *Id.* at 347. Obviously, the nature of the tax and challenge in *ACF* were distinct from this case, and the Department cites no authority permitting us to arbitrarily pluck *ACF*'s holding and couple it to this case.

instead describing Oregon's "property tax law as two systems: one that taxes intangible personal property and one that does not tax intangible personal property." We agree. This is not a challenge to exemption-based discrimination.

Oregon generally taxes "[a]ll real property within this state and all *tangible* personal property situated within this state." Or. Rev. Stat. § 307.030(1) (emphasis added). The language fails to mention *intangible* personal property, nor does it contain any catch-all language broad enough to capture it (such as "all property"). As if to make this more emphatic, subsection 2 reads: "Except as provided in [the statutes governing centrally assessed taxpayers], intangible personal property is not subject to assessment and taxation." *Id*. § 307.030(2). And we cannot infer from the interplay of these two subsections that the Oregon Legislature cloaked an exemption in unusual phrasing, for Oregon's tax code contains many, wide-ranging, explicit tax exemptions. *Id*. §§ 307.040–.867. Clearly, the Legislature knows how to grant tax exemptions.

This is ultimately why the Department's exemption characterization never leaves the station. Oregon's statutory scheme can't create an intangible personal property tax *exemption* because it never creates a generally applicable intangible personal property tax, from which to grant exemptions. *Id*. § 307.030. Instead, the statute creates a tax on real and tangible (but not intangible) personal property that is generally applicable to all Oregon taxpayers; a separate rule applies to centrally assessed taxpayers, who in addition to real and tangible personal property, must also pay taxes on their intangible personal property. *Id*. The statute's plain language renders the Department's endorsed interpretation unnatural. Because there is no generally applicable intangible personal property tax in Oregon, the

Department's effort to make *ACF*'s holding control this case fails.

Yet, as discussed above, BNSF's challenge would lose no steam even if we could accept the Department's strained statutory construction.   49 U.S.C. § 11501(b)(4) would remain a proper vehicle because the practical effect of providing this "exemption" to all except centrally assessed taxpayers is to "target[] railroads, either alone or as part of an isolated group." *Union Pac.*, 940 F.3d at 341; *see also Bair*, 60 F.3d at 413; *Huddleston*, 94 F.3d at 1417. In other words, the tax here is either a separate tax (not an unobtained tax exemption) unaddressed by *ACF*, or it fits neatly within *ACF*'s exception. *See* 510 U.S. at 346–47.

## C.

We now consider whether BNSF has proven that its tax treatment violates the 4-R Act. "[A] tax discriminates under subsection (b)(4) when it treats 'groups [that] are similarly situated' differently without sufficient 'justification for the difference in treatment.'" *Ala. Dep't of Revenue v. CSX Transp., Inc.* (*CSX II*), 575 U.S. 21, 26 (2015) (second alteration in original) (quoting *CSX I*, 562 U.S. at 287). Obviously, BNSF and its fellow centrally assessed taxpayers *are* treated differently than Oregon's locally assessed commercial and industrial taxpayers, but we must determine whether the latter are the appropriate comparison class. Then, we will assess whether Oregon's discriminatory treatment is sufficiently justified.[4]

---

[4] The Department now also argues that BNSF has not adequately shown it is similarly situated to the comparison class of locally assessed commercial and industrial taxpayers. This argument was not raised or

## 1.

BNSF argues, and the district court agreed, that the appropriate comparison class is "Oregon commercial and industrial taxpayers." In *CSX II*, the Supreme Court resolved this question on the merits: "When a railroad alleges that a tax targets it for worse treatment than local businesses, all other commercial and industrial taxpayers are the comparison class."  575 U.S. at 27.  While the Court indicated that a railroad *could* narrow the comparison class to "its competitors in the transportation industry . . . in that jurisdiction," it also said that "all general and commercial taxpayers is *an* appropriate comparison class." *Id*. at 26–27. The scope of the comparison class "depends on the theory of discrimination alleged." *Id*. at 27.  Here, BNSF alleges the most conventional of discrimination claims—that it is treated differently than all other commercial and industrial taxpayers in Oregon. *CSX II* has therefore clearly highballed BNSF's proffered comparison class.

The Department suggests (for the first time in its reply brief) that the proper comparison class must be "other centrally assessed commercial and industrial taxpayers." It first points out that per 49 U.S.C. § 11501(a)(4), "'commercial and industrial property' means property . . . [that is] subject to a property tax levy." From this—and borrowing from *ACF*'s construction that "subject to a property tax" means "not tax-exempt"—the Department

---

addressed below, so we decline to address it in the first instance. *See Vincent v. Trend W. Tech. Corp.*, 828 F.2d 563, 570 (9th Cir. 1987) ("Generally, a party must present his contention to the district court to preserve it for appeal . . . . obviat[ing] the strange result of . . . transform[ing] the court of appeals into a court of first instance . . . ."). We note, however, that this belated argument lacks merit for the reasons set forth below.

next points out that only centrally assessed taxpayers are *subject to* the tax on intangible personal property.  And since only centrally assessed companies are subject to this intangible personal property tax, the Department urges that centrally assessed companies—not locally assessed companies—are the only appropriate comparison class.  If the defendants are right, this would derail BNSF's ability to prove discrimination in this case.

But the defendants are *not* right, for several reasons.  First, the argument rests on the erroneous premise that the alleged discrimination is no more than BNSF's complaint about not obtaining an exemption from a generally applicable tax granted to others.  But as explained above, this intangible personal property tax is "another tax," *see* § 11501(b)(4), not an unobtained tax exemption.  Second, it altogether ignores *CSX II*'s holding that "[w]hen a railroad alleges that a tax targets it for worse treatment than local businesses, all other commercial and industrial taxpayers are the comparison class."  575 U.S. at 27; *see also id*. at 28 ("[T]he category of 'similarly situated' (b)(4) comparison classes must include commercial and industrial taxpayers.").[5]  Third, the defendants' argument, if accepted, would effectively wrest from § 11501(b)(4)'s coverage even a state tax targeted *only* at railroads—an obviously discriminatory tax—because the only similarly situated comparators would be railroads also subject to the

_____

[5] Curiously, while Alabama in *CSX II* insisted the appropriate comparison class must be "all commercial and industrial taxpayers," 575 U.S. at 27, the Department here argues for a narrower comparison class—which in other contexts nearly always makes it easier to prove discrimination.  *Id*. at 30.  But the Department's current argument backtracks from its stipulation that "a proper comparison class for BNSF's claim of discrimination . . . is the class of commercial and industrial taxpayers."

discriminatory tax.     Such a result would "prohibit[]
discrimination of a mild form, but permit[] it in the extreme."
*ACF*, 510 U.S. at 346.  In fact, Defendants' reading "would
deprive subsection (b)(4) of all real-world effect."  *CSX II*,
575 U.S. at 28.  As sure as death and taxes, we can be sure
Congress didn't pass an anti-discrimination law under which
it is impossible to prove discrimination.   Ultimately, we
stand by our sister circuits and decline to spurn *ACF*'s
acknowledgment that railroads may prove a tax
discriminates against them "either alone or as part of some
isolated and targeted group."  510 U.S. at 346; *see also S.C.
Dep't of Revenue*, 959 F.3d at 629–30 (rejecting the State's
effort to restrict the comparison class to only those
businesses also subject to the discriminatory tax treatment).

Nor is there merit to the argument that centrally assessed
taxpayers include rail and non-rail companies too powerful
and wealthy to constitute a truly targeted, isolated group.
For our purposes, railroads' perceived power (real or
imagined) does not change the fact that Congress passed the
4-R Act to protect them from tax discrimination.  Connected
to that, six of the fourteen industries subject to central
assessment are rail industries, which undermines the notion
that railroads are only one discrete industry among many
more subject to this tax.  *See* Or. Rev. Stat. § 308.515.  And
Oregon commercial and industrial taxpayers—including
some ubiquitous commercial powerhouses—also carry, like
railroads, accounting goodwill and other intangible personal
property on their balance sheets, a fact to which the
defendants stipulated early in this litigation.   Moreover,
other federal courts have consistently rejected the notion that
a group is insufficiently isolated and targeted simply because
railroads shoulder the discriminatory burden alongside other
large and powerful non-rail concerns.  *See Huddleston*,
94 F.3d at 1414 (finding isolated, targeted utilities included,

inter alia, railroads, airlines, electricity companies, gas and pipeline companies, telecommunications companies, and water companies); *Bair*, 60 F.3d at 411, n.2 (same); *Ogilvie*, 893 F. Supp. at 886 (same); *Union Pac.*, 940 F.3d at 338 (singling out railroads, airlines, pipeline companies, water conservation and regulation companies, and some others). The 513 centrally assessed companies in this case, like the interstate utility groupings in *Huddleston*, *Bair*, *Ogilvie*, and *Union Pacific*, constitute an isolated and targeted group within the meaning of *ACF*'s exception.  510 U.S. at 346. The proper comparison class here is Oregon commercial and industrial taxpayers.  *CSX II*, 575 U.S. at 27.

Compared to this class, railroads, as part of the small group of centrally assessed taxpayers, "are the only commercial entities subject to an ad valorem [intangible personal] property tax" in violation of 49 U.S.C. § 11501(b)(4).  *ACF*, 510 U.S. at 346.  Absent a sufficient justification, this discrimination violates the 4-R Act.

**2.**

As noted above, the Department's primary strategy has been to miscast Oregon's intangible personal property tax as generally applicable.  Beyond that, the Department vaguely suggests its differential treatment of railroads and other centrally assessed companies is justified by the underlying design and purpose of central assessment itself.  In other words, geographically sprawling concerns are easier to assess at the state versus local level.  Sure, but that "justification" bears no logical relationship to the differential treatment—Oregon's decision to levy an additional intangible personal property tax on centrally assessed companies.  At any rate, this general aside regarding efficacious tax policy cannot justify the discriminatory treatment BNSF challenges here.  And if the Department is

arguing that it is more difficult to disentangle centrally assessed companies' intangible from tangible personal property, this is belied by the fact that the Department accomplished the feat with apparent ease from 2011 to 2016.**[6]**   Even if it were true, such a "justification" is tantamount to admitting that the State is discriminating because it's difficult not to.   Administrative convenience may justify discriminatory tax treatment in other contexts, but not under the 4-R Act.  *See CSX II*, 575 U.S. at 27–28.

## IV.

Oregon's tax on BNSF's intangible personal property unlawfully discriminates against a railroad in violation of 49 U.S.C. § 11501(b)(4).

**AFFIRMED**.

---

CHHABRIA, District Judge, concurring:

I join the opinion in full—even the cringy railroad puns! I write separately to emphasize one point. In this case, the Oregon Department of Revenue spent virtually all its energy arguing that BNSF may not even challenge this type of tax under 49 U.S.C. § 11501(b)(4). That argument, for the reasons canvassed by our opinion and by every circuit to consider the issue, is quite easy to reject. What I also expected from the Department—but never saw—was an

---

**[6]** The record doesn't reveal why, after several years, the Department chose to include BNSF's intangible personal property in its assessment valuations.  But these facts make it very difficult for the Department to credibly argue that its tax treatment does not discriminatorily target BNSF.

argument that including intangible personal property in the taxation of these centrally assessed industries is necessary to create a reasonably level playing field (from a tax standpoint) with locally assessed industries whose intangible personal property is not taxed (perhaps because it's harder to fully capture the value of tangible personal property through a central assessment). *Cf. CSX Transp., Inc. v. Georgia State Bd. of Equalization*, 552 U.S. 9, 20–21 (2007). Or an argument that the activities of the centrally assessed industries are a greater drain on Oregon's resources than the locally assessed industries, thus perhaps justifying the higher overall taxation that results from assessing intangible personal property.

If the Department had made a showing along one of these lines, presumably it could have won—either the centrally assessed industries would be differently situated from the locally assessed ones for purposes of the tax on intangible personal property, or the Department would have offered a justification for treating them differently in any event. After all, the 4-R Act does not absolutely bar states from treating railroads (or a group of industries of which the railroads are a part) differently from other industries (or from a group of industries of which railroads are not a part). The Act merely prevents states from treating railroads differently from "*similarly situated* taxpayers *without sufficient justification*." *Alabama Dept. of Revenue v. CSX Transp., Inc.*, 575 U.S. 21, 31 (2015). To be sure, the Department has articulated a strong justification for centrally assessing rail carriers like BNSF and other network industries in light of the administrative obstacles to assessing these taxpayers on a county-by-county basis. *See MeadWestvaco Corp. v. Illinois Dept. of Revenue*, 553 U.S. 16, 26 (2008); *Comcast Corp. v. Dept. of Revenue*, 337 P.3d 768, 772–73 (Or. 2014). But the Department did not contest that locally assessed

taxpayers are similarly situated with respect to intangible personal property, nor did it offer any justification for taxing the intangible personal property of one group and not the other. The Department was thus destined to lose the case before the train ever . . . oh wait, I think Judge VanDyke used that one already.